JUDGE WOOD



MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
110 East 59th Street, 32nd Floor
New York, New York 10022
Telephone:    (212) 317-1200
Facsimile:    (212) 317-1620
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ARISTEO NICOLAS MATIAS and JUAN
ESCOBAR, *individually and on behalf of
others similarly situated,*

                         *Plaintiffs,*

              -against-

DELIZIA AT 92ND STREET RESTAURANT
CORP. (d/b/a DELIZIA 92 RISTORANTE &
PIZZA), 300 E 92ND ST LLC, ANTONINO
PECORA, JOSEPH PECORA and FRANK
PECORA,

                        *Defendants.*
----------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b)**

**ECF Case**

       Plaintiffs   Aristeo Nicolas Matias and Juan Escobar, individually and on behalf of others

similarly situated (collectively the "Plaintiffs"), by and through their attorneys, Michael Faillace

& Associates, P.C., upon their knowledge and belief, and as against Defendants Delizia at 92nd

Street Restaurant Corp. (d/b/a Delizia 92 Ristorante & Pizza), 300 E 92nd St LLC, Antonino

Pecora, Joseph Pecora and Frank Pecora, (collectively the "Defendants") allege as follows:

## NATURE OF THE ACTION

    1.     Plaintiffs   are former employees of Defendants Delizia at 92nd Street Restaurant

Corp., 300 E 92nd St LLC, Antonino Pecora, Joseph Pecora, and Frank Pecora.

2.      Defendants own, operate, or control an Italian Restaurant located at 1762 Second Avenue, New York, New York 10128 under the name of Delizia 92 Ristorante & Pizza and a six story residential building located at 300 E. 92nd Street, New York New York 10128 (the same location).

3.      Upon information and belief, Individual Defendants Antonino Pecora, Joseph Pecora and Frank Pecora serve or served as owner, manager, principal or agent of Defendant Delizia at 92nd Street Restaurant Corp. and 300 E 92nd Street LLC, and through the corporate entities operate or operated the restaurant and the residential building as a joint or unified enterprise.

4.      Plaintiffs are former employees of the Defendants.  They were primarily employed to perform various restaurant duties, such as making deliveries, cutting and preparing food, refilling containers with pizza ingredients,  receiving and putting away food and supplying deliveries, cleaning the entire restaurant and the residential building, and cleaning and putting away vegetables.

5.      At all times relevant to this complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate compensation for the hours over 40 per week that they worked.  Rather, Defendants failed to maintain accurate recordkeeping of their hours worked, failed to pay Plaintiffs appropriately for any hours worked over 40, either at the straight rate of pay, or for any additional overtime premium.  Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

6.      Defendants employed and accounted for several Plaintiffs as deliverymen in their payroll, but in actuality their duties required greater or equal time spent in non-delivery, non-tipped functions such as maintenance, cleaning, food preparation, and kitchen assistance.

- 2 -

7.      Regardless, at all times Defendants paid these Plaintiffs at the lowered tip-credit rate.

8.      However, under state law Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. §146).

9.      Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum wage rate, and to enable them to pay Plaintiffs at the lower tip-credited rate by designating them deliverymen instead of non-tipped employees.

10.     Defendants' conduct extended beyond the Plaintiffs  to all other similarly situated employees. At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs  and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

11.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages and overtime wage orders pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Lab. Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 (2006) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

12.     Plaintiffs  seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of the Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district.  The Defendants maintain their corporate headquarters and offices within this district, and Defendants operate one restaurant located in this district.  Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiffs*

15.     Plaintiff Aristeo Nicolas Matias ("Plaintiff Nicolas" or "Mr. Nicolas") is an adult individual residing in New York County, New York.  Mr. Nicolas was employed by the Defendants from approximately October 2006 until on or about August 2010.

16.     Plaintiff Juan Escobar ("Plaintiff Escobar" or "Mr. Escobar") is an adult individual residing in New York County, New York.  Mr. Escobar was employed by the Defendants from approximately 1999 until July 21, 2011.

*Defendants*

17.     Defendants own, operate, or control an Italian Restaurant located at 1762 Second Avenue , New York, New York 10128, under the name of Delizia 92 Ristorante & Pizza, at all times relevant to this complaint

18.     Upon information and belief, Defendant Delizia at 92nd Street Restaurant Corp. is a domestic corporation organized and existing under the laws of the State of New York.   Upon information and belief, it maintains its principal place of business at 1762 Second Avenue, New York, New York 10128.

19.     Defendants own, operate, or control a residential building located at 300 E. 92nd Street, New York, New York 10128, under the name of 300 E 92nd St LLC,  at all times relevant to this complaint

20.     Upon information and belief, Defendant 300 E 92nd St LLC is a domestic corporation organized and existing under the laws of the State of New York.   Upon information and belief, it maintains its principal place of business at 1374 First Avenue, New York, New York 10021.

21.     Upon information and belief, Defendant Joseph Pecora is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Joseph Pecora is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporation.  Defendant Joseph Pecora possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation.  He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

22.     Upon information and belief, Defendant Frank Pecora is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Frank Pecora is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporation. Defendant Frank Pecora possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

23.     Upon information and belief, Defendant Antonino Pecora is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Antonino Pecora is sued individually in his capacity as an owner, officer and/ or agent of the Defendant Corporation. Defendant Antonino Pecora possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

24.     Defendants operate an Italian restaurant and a residential building located in the Upper East Side of Manhattan, New York.

25.     Defendants maintain as their principal place of business a centralized office, which is located at 1762 Second Avenue, New York, New York 10128 (which is also the location of the restaurant and the residential building).

- 6 -

26.     Defendants also maintain an office at 1374 First Avenue, New York, New York 10021 as the management office of the residential building.

27.     The Individual Defendants, Joseph Pecora, Frank Pecora and Antonino Pecora, possess operational control over Defendant Corporations, possess an ownership interest in Defendant Corporations, and control significant functions of Defendant Corporations.

28.     Upon information and belief, Defendants Joseph Pecora, Frank Pecora and Antonino Pecora serve or served as Chairman and/or Chief Executive Officer of Defendant Corporations.

29.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

30.     Each Defendant possessed substantial control over the Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of the Plaintiffs, and all similarly situated individuals, referred to herein.

31.     Defendants jointly employed the Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

32.     In the alternative, the Defendants constitute a single employer of the Plaintiffs and/or similarly situated individuals.

33.     Upon information and belief, Individual Defendants Joseph Pecora, Frank Pecora and Antonino Pecora operate Delizia at 92nd Street Restaurant Corp. as either an alter ego of

themselves, and/or fail to operate Delizia at 92nd Street Restaurant Corp. as an entity legally separate and apart from their own selves, by amongst other things

    a.  failing to adhere to the corporate formalities necessary to operate Delizia at 92nd Street Restaurant Corp. as a corporation;

    b.  defectively forming or maintaining the corporate entity of Delizia at 92nd Street Restaurant Corp., by amongst other things failing to hold annual meetings or maintaining appropriate corporate records;

    c.  transferring assets and debts freely as between all Defendants;

    d.  operating Delizia at 92nd Street Restaurant Corp. for their own benefit as the sole or majority shareholder;

    e.  operating Delizia at 92nd Street Restaurant Corp. for their own benefit and maintaining control over it as a closed corporation;

    f.  intermingling assets and debts of their own with Delizia at 92nd Street Restaurant Corp.;

    g.  diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests; and

    h.  other actions evincing a failure to adhere to the corporate form.

    34.   Upon information and belief, Individual Defendants Joseph Pecora, Frank Pecora and Antonino Pecora operate 300 E 92nd St LLC as either an alter ego of themselves, and/or fail to operate 300 E 92nd St LLC as an entity legally separate and apart from their own selves, by amongst other things

    a.  failing to adhere to the corporate formalities necessary to operate 300 E 92nd St LLC as a corporation;

b.   defectively forming or maintaining the corporate entity of 300 E 92nd St LLC, by amongst other things failing to hold annual meetings or maintaining appropriate corporate records;

c.   transferring assets and debts freely as between all Defendants,

d.   operating 300 E 92nd St LLC for their own benefit as the sole or majority shareholder;

e.   operating 300 E 92nd St LLC for their own benefit and maintaining control over it as a closed corporation;

f.    intermingling assets and debts of their own with 300 E 92nd St LLC;

g.   diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests; and

h.   other actions evincing a failure to adhere to the corporate form.

35.     At all relevant times, Defendants were the Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.  Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

36.     In each year from 2005 to the present, the Defendants had gross annual sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

37.     In addition, upon information and belief, the Defendants and/or their enterprises were directly engaged in interstate commerce.  As example, numerous items that were used in the restaurant and the residential building on a daily basis were goods produced outside of the state of New York.

*Individual Plaintiffs*

38.    The Plaintiffs are all current and former employees of the Defendants, who were primarily employed in performing a variety of restaurant and residential building maintenance tasks, such as making deliveries, sweeping, mopping, cleaning the restaurant, and the hallways and stairs of the residential building  receiving and putting away food and supply deliveries, cleaning the counter, the rugs and the pizza oven and preparation area, preparing food and refilling containers with pizza ingredients.

39.    They seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Aristeo Nicolas Matias*

40.    Plaintiff Nicolas was employed by the Defendants from approximately October 2006 until August 2010.

41.    Defendants ostensibly employed Plaintiff Nicolas as a deliveryman. However, Plaintiff Nicolas was also required to perform additional duties including preparing a variety of food items(e.g. cutting vegetables such as carrots, celery, peppers, onions, preparing pasta sauce and  the mixed sauce for the chef (grind beef, cut onion, grind celery and onion), bringing things up from the basement for the food preparer(e.g. pizza dough, pizza sauce and many other things all day long, bringing down and stocking deliveries in the basement and cleaning the  entire restaurant (including the bathrooms, windows, wash the sidewalk, take out the garbage), and cleaning  the five story building in which the pizza place is located (300 E 92nd St., New York, NY).

42.     Although Plaintiff Nicolas was ostensibly employed as a deliveryman, he spent over 3 hours on a daily basis performing non-delivery work throughout his employment with Defendants.

43.     Plaintiff Nicolas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

44.     Plaintiff Nicolas's work duties required neither discretion nor independent judgment.

45.     Plaintiff Nicolas regularly worked in excess of 40 hours per week.

46.     From approximately October 2006 until April 2008, Plaintiff Nicolas worked a schedule from 3:00 p.m. to 1:00 a.m., Mondays, Wednesdays and Thursdays; from 3:00 p.m. to 2:00 a.m. on Fridays and Saturdays; and from 3:00 p.m. to 12:00 a.m. on Sundays (typically 61 hours per week).

47.     From approximately April 2008 until October 2009, Plaintiff Nicolas worked a schedule from 9:00 a.m. to 9:00 p.m., Mondays, Wednesdays, Thursdays, Fridays, Saturday and Sundays (typically 72 hours per week).

48.     From approximately November 2009 until March 2010, Plaintiff Nicolas worked a schedule from 4:00 p.m. to 11:00 p.m., Mondays, Wednesdays, Thursdays, Fridays, Saturday and Sundays (typically 42 hours per week).

49.     From approximately March 2010 until August 2010, Plaintiff Nicolas worked a schedule from 11:00 a.m. to 10:00 p.m., Mondays, Wednesdays and Thursdays; from 3:00 p.m. to 11:00 p.m. on Fridays; from 11:00 a.m. to 11:00 p.m. on Saturdays; and from 11:00 a.m. to 12:00 a.m. on Sundays (typically 64 hours per week).

50. Throughout his employment with the Defendants, Plaintiff Nicolas was paid his wages in cash.

51. From approximately October 2006 until April 2007, Mr. Nicolas was paid $300.00 per week.

52. From approximately April 2007 until April 2008, Mr. Nicolas was paid $120.00 per week.

53. From approximately April 2008 until October 2009, Mr. Nicolas was paid $200.00 per week

54. From approximately November 2009 until March 2010, Mr. Nicolas was paid $120.00 per week.

55. From approximately March 2010 until August 2010, Mr. Nicolas was paid $7.00 per hour.

56. Plaintiff Nicolas's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

57. Plaintiff Nicolas was never notified by Defendants that his tips would be included as an offset for wages.

58. Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Nicolas' wages.

59. Furthermore, Defendants did not provide Plaintiff Nicolas with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

60. No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Nicolas regarding overtime and wages under the FLSA and NYLL.

- 12 -

61.    Plaintiff Nicolas was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked.

62.    Defendants required Plaintiff Nicolas to purchase "tools of the trade" with his own funds—including 25 polo shirts for $5.00 each, a bike for $250, a basket for the bike for $20, a special lock for the bike for $40 and a special raincoat for deliveries for $50. Thus, the total cost of the "tools of the trade" Plaintiff Nicolas was required to purchase was approximately $485.

### Plaintiff Juan Escobar

63.    Plaintiff Escobar was employed by the Defendants from approximately 1999 until on or about July 21, 2011.

64.    Defendants ostensibly employed Plaintiff Escobar as a deliveryman. However, Plaintiff Escobar was also required to perform additional duties including refilling all the ingredients of the pizza into containers, bringing sodas up from the basement and accommodating them into the refrigerator, cutting meats, vegetables, checking the containers of pizza ingredients and continue refilling them all day long, wash tables, cooking pots for the dough, cleaning the basement, picking up the rugs and setting them aside for the porters to mop, cleaning the counter and the entire pizza preparation area, washing the rugs and the pizza oven, preparing the list for orders of beers, waters, juices, sodas, accommodating the fifty or more boxes of liquids in the basement and removing the snow from the sidewalk.

65.    Although Plaintiff Escobar was ostensibly employed as a deliveryman, he spent more than 3 hours on a daily basis performing delivery work throughout his employment with Defendants.

- 13 -

66.    Plaintiff Escobar regularly handled goods in interstate commerce, such as food, sodas, and other supplies produced outside the State of New York.

67.    Plaintiff Escobar's work duties required neither discretion nor independent judgment.

68.    Plaintiff Escobar regularly worked in excess of 40 hours per week.

69.    From approximately August 2005 until on or about July 21, 2011, Plaintiff Escobar worked a schedule from 3:30 p.m. to 1:30 a.m. Sundays through Fridays (typically 60 hours per week).

70.    Throughout his employment with the Defendants, Plaintiff Escobar was paid his wages in cash.

71.    From approximately August 2005 until July 2010, Plaintiff Escobar was paid $120.00 per week.

72.    From approximately July 2010 until on or about July 21, 2011, Plaintiff Escobar was paid $150.00 per week.

73.    Plaintiff Escobar's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

74.    Plaintiff Escobar was never notified by Defendants that his tips would be included as an offset for wages.

75.    Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Escobar's wages.

76.    Furthermore, Defendants did not provide Plaintiff Escobar with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

- 14 -

77.    No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Escobar regarding overtime and wages under the FLSA and NYLL.

78.    Plaintiff Escobar was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device, such as sign in sheets or punch cards, to accurately reflect his actual hours worked.

79.    Defendants required Plaintiff Escobar to purchase "tools of the trade" with his own funds—including 36 polo shirts for $5.00 each and 5 bikes for $100 each. Thus, the total cost of the "tools of the trade" Plaintiff Escobar was required to purchase was approximately $680.00.

## Defendants' General Employment Practices

80.    Defendants regularly required Plaintiffs to work in excess of forty (40) hours per week without paying them the proper minimum and overtime wages or spread of hours compensation.

81.    At all times relevant to this complaint, Defendants maintained a policy and practice of requiring the Plaintiffs and all similarly situated employees to work in excess of forty (40) hours per week without paying them appropriate minimum wage and/or overtime compensation, or spread of hours compensation, as required by federal and state laws.

82.    Plaintiffs, and upon information and belief, all similarly situated employees, were paid week to week at the same flat rate of pay regardless of the actual hours worked.

83.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts, but did not provide them with any additional compensation.

84.    Defendants required the Plaintiffs to perform the jobs of multiple employees in addition to their primary responsibilities as deliverymen.  These responsibilities included

- 15 -

everything from preparing food, refilling all the ingredients of the pizza into containers, bringing sodas up from the basement and accommodating them into the refrigerator, cutting meats, vegetables, cleaning the restaurant, its windows, sidewalks, rugs, pizza oven, and the entire residential building in which the restaurant is located, bringing things up from the basement for the food preparer, receiving deliveries and accommodating them around the basement, bringing up food and utensils from the basement for the cook and the kitchen staff and preparing the list of drinks needed by the restaurant. These extra responsibilities constituted a significant portion of these Plaintiffs' hours worked.

85.     Both Plaintiffs were employed ostensibly as deliverymen (tipped employees) by Defendants, although their actual duties included much greater time spent in non-delivery, non-tipped functions such as preparing food, receiving and accommodating deliveries, maintenance, cleaning, kitchen assistance, and dishwashing.

86.     These Plaintiffs were paid at the lowered tip-credited rate by Defendants, however, under state law Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less) (12 N.Y.C.R.R. § 146).

87.     New York State regulations provide that an employee cannot be classified as a tipped employee "on any day . . . in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

88.     Plaintiffs' duties were not incidental to their occupation as deliverymen, but instead constituted entirely unrelated occupations with duties including food preparation,

- 16 -

stocking, maintenance and cleaning, kitchen work, and ordering of drinks.  While performing these duties, Plaintiffs did not receive tips; therefore, they constitute non-tipped occupations, and Defendants could not lawfully take a tip credit for any of the hours that Plaintiffs worked in these roles.

89.     In violation of federal and state law as codified above, Defendants classified Plaintiffs as tipped employees and paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

90.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum and overtime wage rate.

91.     Defendants failed to post required wage and hour posters in the restaurant, and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

92.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by neglecting to maintain accurate and complete timesheets and payroll records.

93.     All Plaintiffs were paid their wages entirely in cash.

94.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for (1) their full hours worked, (2) for overtime due, and (3) for spread of hours pay.

## FLSA COLLECTIVE ACTION CLAIMS

95.     Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

96.     At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at a one and one-half their regular rates for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA.

97.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
## (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

98.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

99.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for their employment.

100.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

101.   Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

102.   Defendants failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

103.   Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

104.   Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

105.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

106.   Defendants, in violation of the FLSA, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

107.   Defendants' failure to pay Plaintiffs and the putative FLSA Class members overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

108.   Plaintiffs have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

109.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

110.   At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rates and methods of any compensation in exchange for their employment.

111.   Defendants, in violation of the NYLL, paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

112.   Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

113.   Plaintiffs have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE NEW YORK STATE LABOR LAW)

114.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

115.   Defendants, in violation of the NYLL and associated rules and regulations, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of N.Y. Lab. Law § 190 *et seq.* and supporting regulations of the New York State Department of Labor.

116.   Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

117.   Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

118.   Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

119.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

120.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff's spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 and 137-3.11.

121.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

122.    Plaintiffs have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)     Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)     Declaring that the Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(f)     Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs (including the prospective collective class members)

- 22 -

liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(k)     Declaring that the Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages; and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(m)    Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs liquidated damages in an amount equal to twenty-five percent (25%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(o)     Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

- 23 -

(p)     Awarding Plaintiffs (including the prospective collective class members) the

expenses incurred in this action, including costs and attorney's fees; and

(q)     All such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 1, 2011

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:     _____
        Michael Faillace [MF-8436]

        110 East 59th Street, 32nd Floor
        New York, New York 10022
        Telephone: (212) 317-1200
        Facsimile: (212) 317-1620
        *Attorneys for Plaintiffs*